

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2003

# MoneyGram Payment v. Consorcio Oriental

Precedential or Non-Precedential: Non-Precedential

Docket 01-4386

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"MoneyGram Payment v. Consorcio Oriental" (2003). *2003 Decisions.* Paper 542.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/542

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4386

MONEYGRAM PAYMENT SYSTEMS, INC.

Appellant

v.

CONSORCIO ORIENTAL, S.A.;
ROBERTO LOPEZ;
FREDDY LOPEZ;
JOHN DOES 1-10

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil No.00-cv-03764
District Judge: Hon. Katharine S. Hayden

Argued: July 19, 2002
BEFORE: McKee, Fuentes & Aldisert, <u>Circuit Judges</u>

(Filed:   May 21, 2003)

Kevin M. Mattessich, Esquire (**Argued**)
Cozen & O'Connor
One Newark Center
Suite 1900
Newark, NJ 07102
        *Attorney for Appellant*

Richard A. DePalma, Esquire (**Argued**)
Anthony P. Callaghan, Esquire
Coudert Brothers
1114 Avenue of the Americas
New York, NY 10036
        *Attorneys of Appellees*

<u>OPINION OF THE COURT</u>

McKee, <u>Circuit Judge</u>

MoneyGram Payment Services, Inc. appeals the district court's November 13, 2001 Memorandum Order granting defendants' motion to dismiss under Fed. R. Civ. P. 12(b).  MoneyGram sought money damages for an alleged breach of contract and related torts.  MoneyGram argues that the district court erred in dismissing the suit *sua sponte* on grounds that went beyond the scope of the court's Scheduling Order. We will affirm.[1]

**I.**

Inasmuch as we write only for the parties who are familiar with the background of this dispute, we need not set forth the underlying facts except insofar as may be helpful to our discussion.

MoneyGram argues that the district court erred in basing its dismissal on the forum selection clause contained in the Agency and Trust Agreement between it and Consorcio Oriental, S.A., a privately held Dominican Republic corporation.  That forum selection clause provides, in pertinent part, that "any action or proceeding initiated under this Agreement shall be maintained exclusively in the courts of the State of New York or of

---

[1] Our review of a district court's grant of a Rule 12(b) motion to dismiss is plenary.  *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 (3d Cir. 2000).

2

the United States of America for the Southern District of New York." (Agreement at ¶ 21).

In addition, ¶ 22 of the Agreement provides that "[a]ny unresolved dispute, controversy or claim arising out of *or relating to* [the Agreement] shall be resolved exclusively by final and binding arbitration . . . with the place of arbitration to be New York, New York[]" (emphasis added). An Amendment to ¶ 22 removes all doubt as to the materiality of the arbitration clause to the bargain struck by the contracting parties. The Amendment states that arbitration "IS EXPRESSLY BARGAINED FOR BY THE PARTIES AND IS A MATERIAL INDUCEMENT TO [ENTERING] INTO THE AGREEMENT." Additional Terms at ¶ H (emphasis in original).

Despite this explicit language, MoneyGram filed the instant suit in the United States District Court for the District of New Jersey, and now urges that we interpret these broad clauses very narrowly so as to reach a result that would to be in direct contradiction to the contract MoneyGram is trying to enforce. MoneyGram argues that the nature of the defendants' alleged wrongdoing preempts the scope of these provisions, and it insists that the district court's conclusion to the contrary was error. It also argues that the district court "blind sided"[2] it by resting its decision on the forum selection clause *sua sponte* without affording MoneyGram an adequate opportunity to demonstrate why the forum selection clause should not be enforced. We disagree.

_____

[2] This is our term, not MoneyGram's.

3

Initially, we note that the Scheduling Order that MoneyGram claims narrowed the issues that the district court would consider[3] stated:

> IT IS . . . ORDERED that Defendants Roberto Lopez and Freddy Lopez . . . shall file and serve their motion contesting this Court's exercise of personal jurisdiction over them and Defendant . . . Consorcio . . . shall file and serve its motion demanding referral of this matter to arbitration *pursuant to the terms of the parties' agreement.*

A103-104 (emphasis added). The "parties' agreement" clearly included the aforementioned forum selection and arbitration clauses, both of which required MoneyGram to bring any action or proceeding in New York rather than New Jersey where it chose to file suit. Accordingly, we can not accept MoneyGram's claim of "surprise" that the district court, upon reviewing the very agreement referred to in the Scheduling Order, concluded that the action belonged in New York, not in New Jersey.

MoneyGram would have us conclude that filing suit in New Jersey is somehow consistent with provisions requiring "*[a]ny* unresolved dispute . . . arising out of" the Agreement, or "any action or proceeding initiated" under the Agreement, to be brought in New York City. MoneyGram attempts to escape the operation of the forum selection clause, in part, by arguing fraud. However, we will not redraft this Agreement, as MoneyGram's argument requires, merely because MoneyGram bottoms its claim for damages on alleged fraud and conversion it claims occurred in New Jersey.

In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983), we stated that:

---

[3] The Scheduling Order was entered by the Magistrate Judge, not by the District Judge.

4

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

*Id.* at 202.

Significantly, MoneyGram does not allege that it was fraudulently induced into entering this Agreement. Indeed, MoneyGram's own Complaint establishes the contrary. MoneyGram alleges: "Between October 1, 1999 and January 6, 2000, *computer error* caused duplicate pre-funding to be made into Consorcio's New Jersey bank account." Complt at ¶¶ 12-15, Appellant's Br. at 8 (emphasis added). According to MoneyGram, the defendants knew of this error and fraudulently converted the excess payments to their own use rather than alerting MoneyGram to the error and repaying the duplicate payments.

In *Scherk v. Alberto-Culver Co.*, the Supreme Court addressed how claims of fraud affect the enforceability of a forum-selection clause. 417 U.S. 506, 513 (1974). There, Alberto-Culver, an American manufacturer, purchased three German enterprises from Scherk, a German citizen. *Id.* at 508. The purchase contract contained an arbitration clause that the Court described as "a specialized forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Id.* at 519. The clause provided that any controversy or claim arising under the contract would be referred to arbitration

5

before the International Chamber of Commerce in Paris, France. *Id.* at 508 n.1. One year after the contract was finalized, Alberto Culver discovered that certain trademark rights purchased under the contract were encumbered. *Id.* at 509. That was contrary to representations made by Scherk during contract negotiations. *Id.* at 508. Consequently, Alberto-Culver filed suit in federal district court in Illinois alleging, *inter alia*, fraud. *Id.* at 509. Scherk responded with a motion to dismiss for lack of personal jurisdiction. *Id.*

The Court relied upon *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), in upholding enforcement of the forum selection clause despite allegations of fraud. *Id.* at 518. The Court noted that the concern it had expressed in *M/S Bremen* regarding enforcing such clauses in suits alleging fraud:

> does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.

*Id.* at 519 n. 14.

Thus, contrary to MoneyGram's position here, the mere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of "fraud in the inducement of the [forum-selection] clause itself." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

MoneyGram does not claim that defendants fraudulently caused it to enter into the forum selection clause, arbitration clause, or the Agreement. Indeed, as mentioned above,

6

MoneyGram argues that fraud occurred after the contractual relationship was formed and it came about as a result of defendants not properly responding to unintentional "computer error." Accordingly, the district court quite properly held MoneyGram to its own agreement by dismissing the action in favor of a New York forum. *See Coastal Steel Corp.,* 709 F.2d at 202.

We are similarly not convinced by MoneyGram's claim that the court's *"sua sponte"* reliance on the forum selection clause deprived it of an opportunity to establish that the clause ought not to be enforced for reasons of public policy and severe burden. As Justice Kennedy noted in his concurring opinion in *Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988), "a valid forum selection clause [should be] given controlling weight in all but the most exceptional case." Moreover, the party opposing enforcement of a forum selection clause has a "heavy burden of showing not only that the balance of convenience is strongly in favor of [a different forum] but also that [resolution in the selected forum] will be so manifestly and gravely inconvenient to [it] that it will be effectively deprived of a meaningful day in court." *Zapata Off-Shore Co.,* 407 U.S. at 19. We are hard pressed to accept MoneyGram's claim that bringing a proceeding in New Jersey, rather than just across a river in New York City is now so inconvenient that it should be excused from the contractual undertaking in which it agreed to do just that.

MoneyGram argues that the district court erred in dismissing its claims without first providing it with an opportunity to make the requisite "strong showing" that the clause was the result of fraud or overreaching, that enforcement of the clause would violate public policy in the forum, or that enforcement of the clause in a particular case

would be so inconvenient as to be unreasonable. MoneyGram claims that it could have developed a record in support of its claim that the clause violated public policy by "exploring State regulation of the money transfer industry, or the State's interest in protecting funds entrusted by customers for transfer." Appellant's Br. at 22-3. Yet, even now, MoneyGram offers nothing to support these vague reference. MoneyGram is, after all, suing to enforce that very Agreement according to its terms, and those terms require MoneyGram to raise its purported claims of unfairness or public policy in a New York court, or before a panel of arbitrators in New York.

MoneyGram cites *Zelson v. Thromforde*, 412 F.2d 56, 58-59 (3d Cir. 1969), to support its contention that the district court erred in raising the forum selection clause *sua sponte* and impermissibly granting defendants' 12(b) motion to dismiss in reliance on that clause. In *Zelson*, the district court dismissed the action "without the issue [of personal jurisdiction] having been raised below by defendant-appellees." *Id.* In that context, we stated that "a court may not *sua sponte* dismiss for want of personal jurisdiction, at least where a defendant has entered an appearance by filing a motion." *Id.* That is not the case here. Rather, Consorcio and the Lopez brothers filed an Answer raising several affirmative defenses including the arbitration clause, improper venue, and lack of personal jurisdiction over the individual defendants. A42.

**B.**

MoneyGram also faults the district court for failing to rule on whether it had personal jurisdiction over the individual defendants. It argues:

8

> [b]y entwining the individual Defendants in its *sua sponte* use of the forum selection clause, the District Court failed to address whether or not it had personal jurisdiction over those Defendants on the grounds briefed by the parties. The record before the Court, however, was sufficient to establish that jurisdiction.

Appellant's Br. at 25. The district court's only response to the defendants' challenge to *in personam* jurisdiction was the following query: "Why would the Court deal with the issue of jurisdiction . . . over Robeto Lopez and Freddie Lopez, one has to ask, if the parties have already agreed that . . . 'any action . . . under this Agreement shall be maintained exclusively in the courts of the State of New York.'" Dist. Ct. Op. at 8.

However, the district court's reasoning on this issue ignores the fact that the Agreement containing that forum selection clause is between MoneyGram and Consorcio. Neither Roberto Lopez nor Freddie Lopez signed the Agreement in their individual capacities. Rather, they signed as officers of the corporate entity, Consorcio. MoneyGram's allegations and jurisdictional arguments sweep broadly enough to reach Roberto and Freddie as individuals. Yet, ironically, MoneyGram challenges the court's dismissal of claims against them by arguing "the Agency and Trust Agreement between Consorcio and MoneyGram [] . . . is wholly inapplicable to the individual defendants." Appellant's Br. at 33. We agree.[4] However, we disagree with MoneyGram's position that the court had *in personam* jurisdiction over those two individuals.

---

[4] The district court's oversight in this regard is clearly understandable since MoneyGram's claims of error evidence a convenient lapse in the distinction between corporate and individual actions and liability.

9

A federal court has personal jurisdiction over a nonresident defendant to the extent authorized under the law of the forum state in which the district court sits, within constitutional limitations of due process. Fed. R. Civ. P. 4(e); *see also Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 31 (3d Cir. 1993). Therefore, we begin an inquiry into the district court's jurisdiction over the individual defendants by looking to New Jersey's long-arm statute. New Jersey courts have held that that statute reaches to the "outermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971); s*ee also* N.J. Ct. R. 4:4-4. Thus, the reach of the New Jersey statute is coextensive with the Due Process Clause of the Fourteenth Amendment.

In all cases where the defendant moves for dismissal for lack of personal jurisdiction "the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). In reviewing a ruling on a motion to dismiss for lack of *in personam* jurisdiction, we accept plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992), *cert. denied*, 506 U.S. 817.

Personal jurisdiction over a nonresident defendant may be asserted in two contexts. General jurisdiction exists when a defendant has maintained such continuous and systematic contacts with the forum state that the defendant is generally subject to the exercise of a court's jurisdiction there without regard to the relationship between the court action and the forum. *See Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466

10

U.S. 408, 414-415 (1984). Specific jurisdiction is far narrower, however. It arises when "the claim is related to or arises out of the defendant's contacts with the forum." *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984). Specific jurisdiction arises within the context of the relationship between the defendant, the cause of action, and the forum embodied in the "minimum contacts" analysis announced in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Under *International Shoe*, a federal court can only assert personal jurisdiction over a nonresident defendant if the "minimum contacts" between the defendant and the forum "do not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316. Those contacts must be sufficient to make it "reasonable, in the context of our federal system of government, to require the [defendant] to defend the particular suit which is brought there." *Id*. at 317.

The reasonableness of subjecting a nonresident defendant to the courts of a given forum depend upon the "quality and nature of the defendant's activity" in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The plaintiff must establish that the defendant has "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

Ultimately, "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state." *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 649 A.2d 379, 388-89 (N.J. 1994). Here, MoneyGram is asking the federal court to exercise *in personam* jurisdiction over both a corporate entity and two individuals in their individual capacities. As noted above, both

11

of those individuals are officers of the corporate defendant. MoneyGram alleges: "Defendants themselves concede that those individual Defendants have traveled to New Jersey, and Freddy Lopez traveled to the State to establish a bank account in Consorcio's name *specifically for the purpose of doing business in New Jersey* with a business then located in the State." Appellant's Br. at 28. (Emphasis Added). However, the "business" that MoneyGram seeks to attribute to Freddie was opening Consorcio's bank account. MoneyGram concedes this. It states: "Fairly read, the Complaint shows additionally, *inter alia*, that the Lopez brothers are officers and owners of Consorcio, and, as such, direct and control the actions of the corporation and its agents." *Id*. at 29. MoneyGram then goes on to argue that the Lopez brothers used the New Jersey bank account to systematically conduct business with MoneyGram's New Jersey office. However, once again, MoneyGram ignores that the "business" that forms the basis of its claims is the business of the Dominican corporation. It is not the business of the individual officers and shareholders who are Dominican citizens with no identified contact with New Jersey other than in their capacity as corporate agents.

It is axiomatic that "jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in" a particular forum. *Nicholas v. Saul Stone & Co*., 224 F.3d 179, 184 (3d Cir. 2000) (citing *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984)). Rather, "[e]ach defendant's contacts with the forum state must be assessed individually." *Id*. at 781 n.13.

MoneyGram argues that Roberto and Freddy Lopez used Consorcio's New Jersey bank account "to conduct *regular and systematic* business with MoneyGram," Appellant's Br. at 29. However, MoneyGram's attempt to ensnare Roberto and Freddie Lopez in a jurisdictional web by reciting Consorcio's contacts with New Jersey both ignores and obfuscates Consorcio's separate legal identity. Although MoneyGram has clearly asserted a sufficient basis for *in personam* jurisdiction over Consorcio, its Complaint falls woefully short of establishing the nexus necessary to extend that jurisdiction to either Freddie or Roberto Lopez. *See Saul Stone & Co.*, 224 F.3d at 184.

Moreover, the deficiencies of MoneyGram's complaint can not be spackled over by MoneyGram's allegations of fraud. In *Imo Indus. Inc. v. Kiekert*, 155 F.3d 254 (3d Cir. 1998), we stated that allegations of fraud may support *in personam* jurisdiction where:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id*. at 265-66. Under the third prong, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id*.

13

MoneyGram claims that the Lopez brothers committed a fraud by remaining silent about the excess deposited in the New Jersey account, and then fraudulently conveying that money to other corporate entities. However, the silence emanated from their residence in the Dominican Republic, and nothing suggests that the other entities that they owned were located anywhere else; there is certainly nothing to allow us to conclude that any of them were in New Jersey; and MoneyGram does not argue to the contrary.

## II.

Thus, although we agree with MoneyGram that the district court erred in enforcing the forum selection clause and arbitration clause against Roberto and Freddie Lopez, we hold that the Complaint here fails to establish *in personam* jurisdiction over them. Accordingly, we will affirm the district court's dismissal of the Complaint under Fed. R. Civ. P. 12(b).

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion

/s/   Theodore McKee
Circuit Judge

14